IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| AUTURO SILVA,<br>    ID # 1986356,<br>        Petitioner,<br><br>vs.<br><br>DIRECTOR, Texas Department of Criminal<br>Justice, Correctional Institutions Division,<br>        Respondent. | )<br>)<br>)<br>)<br>)   No. 3:18-CV-49-L-BH<br>)<br>)<br>)<br>)   Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Before the Court is the *Petition for a Writ of Habeas Corpus by a Person in State Custody*, received on January 9, 2018 (doc. 3). Based on the relevant findings and applicable law, the petition should be **DENIED** with prejudice.

### I.    BACKGROUND

Arturo Silva (Petitioner),[2] an inmate currently incarcerated in the Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID), filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2015 conviction and sentence in Cause No. F-13-30899-R in the 265th Judicial District Court of Dallas County, Texas. (*See* doc. 3 at 2.)[3] The respondent is the Director of TDCJ-CID. (*See id.* at 1.)

**A.**    **State Court Proceedings**

On August 15, 2013, Petitioner was indicted for possession with intent to deliver four grams or more but less than 200 grams of methamphetamine in Cause No. F-13-30899-R in the

---

[1] By *Special Order No. 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation.

[2] The style of the petition shows the petitioner's name as Auturo Silva, but he signed it as Arturo Silva.

[3] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

265th Judicial District Court of Dallas County, Texas. (*See* doc. 18-14 at 8.) He pleaded not guilty, waived a jury trial, and proceeded to a bench trial on January 15, 2015. (*See id.* at 52; doc. 18-17.) He also moved to suppress the prosecution's evidence on grounds that it was obtained through an unlawful search and seizure in violation of the Fourth Amendment, and the trial court carried the motion through trial. (*See* doc. 18-14 at 23-26, 28-29, 35-42; doc. 18-17 at 7.)

According to the appellate court's recitation of the evidence, Drug Enforcement Administration (DEA) agents conducting an investigation in the Dallas area observed what appeared to be a drug deal between their target and Petitioner. The target and Petitioner drove to, and met at, a residence in Grand Prairie (the residence), which was next door to the address where Petitioner's vehicle was registered. At the DEA's request, local law enforcement officers were sent to the residence. They knocked on the front door, and when they received no answer, they went around the house and knocked on a bedroom window. After hearing loud noises from inside the house, they returned to the front door, where a 12-year-old boy eventually answered the door. The boy told the officers that his uncle was in the house, but after leaving the door, he returned and said his uncle was gone. The boy responded "okay" to an officer's request to enter the residence. After entering the living room, the officers encountered Petitioner's brother, who had exited a bedroom and met the officers in the hallway. The officers asked Petitioner's brother to exit the residence with them. During the time they were inside, the officers did not see any contraband.

Once outside and in response to the officers' questions, Petitioner's brother said that he lived at the residence and had a key to the house. He gave consent for the officers to search the residence. On a dresser in the bedroom where they had heard noises earlier, the officers found a digital scale that contained a "crystalline substance consistent with the texture and color of

2

methamphetamine residue." In the first dresser drawer, they found a large quantity of "crystal substance." The lead officer then halted the search in order to obtain a search warrant.

After obtaining the search warrant, the officers continued their search of the bedroom, where they also found a safe and the keys for it. In it, they found methamphetamine, cash, baggies, notepads containing "drug notes" and numbers, a receipt with Petitioner's name on it, and identification for Petitioner and his wife. On the bedroom wall were certificates with Petitioner's name, and on the dresser was a plastic bowl with methamphetamine. Petitioner's fingerprint was later found on the bowl. In the kitchen, the officers found methamphetamine in a cabinet, a .25 caliber pistol, a prescription bottle with Petitioner's name on it, baggies, and a digital scale. Petitioner was ultimately arrested in connection with the evidence seized at the residence. *See Silva v. State*, No. 05-15-00165-CR, 2016 WL 947189, at *1-2 (Tex. App.—Dallas Mar. 14, 2016, pet. ref'd).

On January 16, 2015, the trial court denied Petitioner's motion to suppress and found him guilty of possession with intent to deliver methamphetamine in an amount of four grams or more but less than 200 grams. (*See* doc. 18-14 at 44-46; doc. 18-18 at 4.) The court also made an affirmative deadly weapon finding. (*See* doc. 18-14 at 44.) It sentenced Petitioner to 15 years' imprisonment. (*See id.* at 44.) The judgment was affirmed on appeal. (*See* doc. 18-3 at 13); *see also Silva*, 2016 WL 947189, at *5.

The Texas Court of Criminal Appeals refused Petitioner's petition for discretionary review (PDR). *See Silva v. State*, PD-0400-16 (Tex. Crim. App. Aug. 24, 2016). His state habeas application, which was signed on May 28, 2017, and received by the state court on June 8, 2017, was denied without written order on the findings of the trial court on October 25, 2017. (*See* doc. 18-28 at 12-29; doc. 18-27); *see Ex parte Silva*, WR-87,521-01 (Tex. Crim. App. Oct. 25, 2017).

**B.      Substantive Claims**

Petitioner's § 2254 petition raises the following grounds:

(1) Illegal search of private residence 4th Amendment violation;

(2) Illegal seizure of conents [sic] 4th and 14th Amendment violation;

(3) Illegal affirmative link to drugs within the premises. 14th Amendment violation; and

(4) Illegal affirmative link to firearm within the premises, 4th, & 14th Amendment violation.

(doc. 3 at 6-7; *see also* doc. 4 at 5-6.)  In his memorandum in support of the § 2254 petition, Petitioner appears to also claim ineffective assistance of counsel at trial, alleging: "(1) warrant never presented (2) [ ] challenge of the deadly weapon finding (3) [ ] ineffectively investigate evidence as to ID, identify the actual inoperable gun (4) invasion of home w/o a warrant." (doc. 4 at 12.)  He also indicates that he had no knowledge that his trial would be before the court, and that "given the right he would have taken it to jury trial," and he appears to claim that his counsel failed to call his son and brother as witnesses.  (*Id.* at 13.)

Respondent filed a response on July 13, 2018.  (*See* doc. 19.)  Petitioner filed a reply on September 18, 2018.  (*See* doc. 22.)

## II.      APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).  Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions.  Under § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). As for the "unreasonable application" standard, a writ may issue "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; accord *Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *See Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III.     ILLEGAL SEARCH AND SEIZURE

In his first and second grounds, Petitioner contends that the residence was illegally searched, that the evidence seized from the residence was illegally obtained in violation of the Fourth Amendment, and that the trial court erred in denying his suppression motion. (*See* doc. 3 at 6; doc. 4 at 2-9, 12; doc 22 at 7-10.) He asserts various bases for his Fourth Amendment claims, including lack of consent to search the residence, lack of probable cause due to the unreliability of an informant, and alleged refusal by the court to allow testimony from his brother and son regarding the entry and search of the residence. (*See* doc. 4 at 4-8; doc. 22 at 7-9, 11.)

It is well-settled that a claim that evidence obtained through an unconstitutional search and seizure was erroneously admitted at trial cannot be a basis for federal habeas relief if the state provided an opportunity for a full and fair litigation of the Fourth Amendment claim. *Williams*, 529 U.S. at 375; *Stone v. Powell*, 428 U.S. 465, 482 (1976). If a state has a process that allows an opportunity for full and fair litigation of Fourth Amendment claims, federal habeas review of those claims is barred, even if a defendant did not use the state process to litigate the claims. *Register v. Thaler*, 681 F.3d 623, 628 (5th Cir. 2012); *Moreno v. Dretke*, 450 F.3d 158, 167 (5th Cir. 2006). The State of Texas has a process that allows defendants to litigate Fourth Amendment claims at

the trial level and on direct appeal. *Register*, 681 F.3d at 628. The Fifth Circuit has also stated that a Fourth Amendment claim has been fully and fairly litigated in state court where the material facts were adequately developed in state court and there is no undeveloped evidence sufficient to call into question the reliability of the state court's determination. *Andrews v. Collins*, 21 F.3d 612, 631 (5th Cir. 1994) (quoting *Streetman v. Lynaugh*, 812 F.2d 950, 958 (5th Cir. 1987)) (internal quotation marks omitted).

Here, Petitioner raised his Fourth Amendment claims at the trial level through motions to suppress and as points of error on direct appeal. (*See* doc. 18-14 at 23-26, 28-29, 35-42; doc. 18-9 at 17-45.) He also raised these claims as grounds for relief in his PDR and state habeas application. (*See* doc. 18-12 at 9-16; doc. 18-28 at 17-18, 23-24.) He has not alleged any undeveloped facts sufficient to call into question the reliability of the state court's determination.[4] The claims were fully and fairly litigated at the state level, and they are therefore barred from federal habeas review. Accordingly, Petitioner's first and second grounds should be denied.

## IV.  SUFFICIENCY OF EVIDENCE

In his third and fourth grounds, Petitioner contends that the evidence was insufficient to affirmatively link him to the methamphetamine and firearm seized during the search.

Federal courts conduct an extremely limited review of habeas claims based on the sufficiency of the evidence using the standard in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Jackson* held that the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding is "whether, after viewing the evidence in

---

[4] Petitioner includes undated affidavits of his brother and the 12-year-old boy to support his claim that the officers did not have lawful consent to enter the residence. (*See* doc. 4 at 18, 20; doc. 22, 14-15.) The same facts were also alleged in Petitioner's motions to suppress, direct appeal, PDR, and state habeas application. Because the material facts underlying the affidavits were fully and fairly litigated in the state court, Petitioner's Fourth Amendment claims are barred from federal habeas review. *See Register*, 681 F.3d at 628.

the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Moreover, the trier of fact has the responsibility of weighing the evidence, resolving conflicts in testimony, and drawing reasonable inferences from basic facts to ultimate facts. *Id.* Under *Jackson*, "the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). "Determining the weight and credibility of the evidence is within the sole province" of the trier of fact. *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992). Courts view "any required credibility determinations in the light most favorable to the guilty verdict." *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000). They do not "second-guess[ ] the weight or credibility given the evidence." *United States v. Ramos-Garcia*, 184 F.3d 463, 465 (5th Cir. 1999).

The state appellate court held that the evidence was sufficient to link Petitioner to the methamphetamine:

> In this case, the officers found sufficient evidence to conclude the bedroom where the drugs were found belonged to [Petitioner] and his wife: their identification and a receipt with [Petitioner's] name were found in the dresser drawer, and certificates bearing [Petitioner's] name were hanging on the bedroom walls. In that bedroom, officers found a container bearing [Petitioner's] fingerprint and methamphetamine residue as well as a digital scale in plain sight on top of the dresser. Inside the dresser drawer, a closet, and the bedroom safe, officers found more methamphetamine, baggies like those used to package and distribute drugs, drug ledgers, and cash. Viewing the evidence in the light most favorable to the verdict, the trial court could have reasonably found beyond a reasonable doubt that [Petitioner] exercised actual care, custody, and control of the methamphetamine seized from the bedroom.

*Silva*, 2016 WL 947189, at *4. Petitioner has not shown that the state court's finding on the sufficiency of the evidence to support an affirmative link between him and the methamphetamine was unreasonable.

The state appellate court also found the evidence sufficient to link Petitioner to the firearm:

> The pistol was found in a kitchen cabinet on the same shelf as methamphetamine and a digital scale that bore [Petitioner's] fingerprint. Officers also found a box of clean baggies and a prescription bottle bearing [Petitioner's] name in the kitchen, although the record is not clear as to where in the kitchen those items were found.
>
> We acknowledge the kitchen may well have been shared space in the residence as the location of food storage and preparation. However, the presence of [Petitioner's] fingerprint on the scale is sufficient to tie [Petitioner] to use of the kitchen in the drug business being conducted in the residence, not merely food-related activities. [Petitioner] also kept his personal medication in the kitchen. We conclude the gun was hidden in a place tied to [Petitioner]. Again, viewing the evidence in the light most favorable to the verdict, the trial court could have reasonably found beyond a reasonable doubt that [Petitioner] exercised actual care, custody, and control of the pistol seized from the kitchen.

*Id.*, at *5 (internal citation omitted).

Petitioner also argues that the evidence was insufficient to establish an affirmative link between him and the firearm for purposes of the trial court's deadly weapon finding because the firearm was inoperable and was not ballistically tested. (*See* doc. 3 at 7; doc. 4 at 5, 9-11; doc. 22 at 11.) "[Section] 46.01(3) of the Texas Penal Code does not require a firearm to be presently capable of firing; rather, a device '*designed, made, or adapted*' to perform in the manner described is a firearm."[5] *Grimmett v. State*, No. 05-05-00972-CR, 2006 WL 2143803, at *2 (Tex. App.—Dallas Aug. 2, 2006, no pet.) (quoting *Thomas v. State*, 36 S.W.3d 709, 711 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd)). His argument is therefore without merit.[6]

Because Petitioner has failed to show that the state court's rejection of his claims challenging the sufficiency of the evidence was unreasonable, he is not entitled to § 2254 relief, and his claims on these grounds should be denied.

---

[5] A firearm is a deadly weapon under § 46.01(17) of the Texas Penal Code.

[6] In the context of his Fourth Amendment claims, Petitioner makes conclusory statements that the prescription bottle with his name on it actually belonged to his son, Arturo Silva, Jr. (*See* doc. 22 at 8, 10, 20-21.) To the extent he is challenging the state court's reliance on the prescription bottle in finding that the evidence was sufficient to link him to the firearm, his conclusory statements do not show that the state court's rejection of his claim was unreasonable.

9

## V.   INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner appears to argue that his counsel provided ineffective assistance on the following grounds: "(1) warrant never presented (2) [ ] challenge of the deadly weapon finding (3) [ ] ineffectively investigate evidence as to ID, identify the actual inoperable gun (4) invasion of home w/o a warrant." (doc. 4 at 12.) He also seems to allege that he had no knowledge that he would have a bench trial and that "given the right he would have taken it to jury trial," and that his counsel failed to call his son and brother as witnesses at trial. (*Id.* at 13.)

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the movant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 697. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see Williams*, 529 U.S. at 393 n.17 (inquiry focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

A. **Exhaustion and Procedural Bar**

Respondent contends that some of Petitioner's claims of ineffective assistance of counsel are unexhausted and procedurally barred.[7] (*See* doc. 19 at 15-17.)

A petitioner must fully exhaust state remedies before seeking federal habeas relief. 28 U.S.C. § 2254(b).  To exhaust under § 2254, he must fairly present the factual and legal basis of any claim to the highest available state court for review prior to raising it in federal court.  *See Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993); *Richardson v. Procunier*, 762 F.2d 429, 432 (5th Cir. 1985); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982).  In Texas, a prisoner must present his claim to the Texas Court of Criminal Appeals in a PDR or a state application for a writ of habeas corpus.  *See Bautista v. McCotter*, 793 F.2d 109, 110 (5th Cir. 1986); *Richardson*, 762 F.2d at 432.  A petitioner must also present his claims in a procedurally correct manner. *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001); *Deters*, 985 F.2d at 795.

The normal rule that a state court must explicitly apply a procedural bar to preclude federal review does not apply to those cases where a petitioner has failed to exhaust his state court

---

[7] In his state habeas application, Petitioner alleged ineffective assistance of counsel by (1) failing to: file a motion for a mistrial or for a new trial, prevent Petitioner from waiving his rights to a jury trial, object to the waiver, or raise the issue of his constitutional rights being violated; and (2) allowing: Petitioner to incriminate himself by not objecting to the jury waiver and the admission of evidence from the illegal search of the residence. (*See* doc. 18-28 at 25, 41; doc. 18-29 at 9.)  To the extent Petitioner's claims are based on the alleged invasion of the residence without a warrant and the waiver of a jury trial, those claims were raised in his state habeas filings.  (*See* doc. 18-28 at 25; doc. 18-29 at 9.)

11

remedies, and the state court to which he would be required to present his unexhausted claims would now find those claims to be procedurally barred. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). In those cases, the federal procedural default doctrine precludes federal habeas corpus review. *Id.*; *see also Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997) (finding unexhausted claim that would be barred by the Texas abuse-of-the-writ doctrine if raised in a successive state habeas petition to be procedurally barred).

Here, Petitioner did not raise some of his ineffective assistance of counsel claims either on appeal or in his state habeas application, so those are unexhausted. He would be barred from raising these claims in a successive state habeas application, so his claims are also procedurally barred from federal habeas review. *See Nobles*, 127 F.3d at 423. Nevertheless, the Texas bar on successive or subsequent state habeas applications "will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Trevino v. Thaler*, 569 U.S. 413, 429 (2013) (quoting *Martinez v. Ryan*, 566 U.S. 1, 17 (2012)). "A 'substantial' claim is one that has 'some merit.'" *Ibarra v. Davis*, 738 F. App'x 814, 817 (5th Cir. 2018). "An insubstantial claim is one which 'does not have any merit' or is 'wholly without factual support.'" *Id.* Accordingly, determination of the merits of both the exhausted and unexhausted ineffective assistance claims is required.

**B.   Warrant**

In an unexhausted claim, Petitioner appears to contend that counsel failed to argue that the search warrant for the residence was never presented. (*See* doc. 4 at 12.) He does not develop this argument, and there is no evidence in the record that the search warrant was not presented. "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a

critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983). He is not entitled to relief on his conclusory claim. *See Miller*, 200 F.3d at 282 ("conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."); *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."). Because this unexhausted claim of ineffective assistance of counsel does not have merit, it is not a substantial claim that excuses the procedural bar. *See Ibarra*, 738 F. App'x at 817.

**C.    Deadly Weapon Finding**

In an unexhausted claim, Petitioner contends that his trial counsel failed to challenge the deadly weapon finding. (*See* doc. 4 at 12.) At trial, counsel cross-examined the prosecution's witnesses about the location of the firearm and the extent to which it was examined and tested, and also suggested that it belonged to a woman. (*See* doc. 18-17 at 106-09.) During closing arguments, counsel emphasized the alleged unlawful search of the residence and lack of evidence linking Petitioner to the drugs seized at the residence; success on these arguments would have eliminated any need for a deadly weapon finding. (*See id.* at 129-38.)

The trial court found that Petitioner was guilty of the crime of possession with intent to distribute and made "an affirmative finding of use of a deadly weapon in the commission of the offense." (doc. 18-18 at 6-7.) The Texas Court of Criminal Appeals has held that the "use" of a deadly weapon under Texas law extends to "*any* employment of a deadly weapon, even its simple possession." *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989) (en banc) (internal quotation marks and citation omitted). Further, as discussed, a gun is not required to be operable

to constitute a firearm under the Texas Penal Code. *See Grimmett*, 2006 WL 2143803, at *2. The trial court followed these state laws in making its finding. Petitioner has not shown that counsel's performance was deficient. This unexhausted claim lacks merit and is not a substantial claim that excuses the procedural bar. *See Ibarra*, 738 F. App'x at 817.

**D.     Investigation**

In an unexhausted claim, Petitioner contends that counsel ineffectively "investigate[d] evidence as to ID, identify the actual inoperable gun." (doc. 4 at 12.)

Counsel has a duty to investigate the charges and evidence against his client. *Strickland*, 466 U.S. at 690-91. "[C]ounsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case." *Id.* at 690. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial," however. *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *see also United States v. Glinsey*, 209 F.3d 386, 393 (5th Cir. 2000) (stating, in context of direct appeal that, "[t]o establish his failure to investigate claim, [the movant] must allege with specificity what the investigation would have revealed and how it would have benefitted him."). "[T]here is no presumption of prejudice based on the failure to investigate." *Gonzalez v. United States*, Civ. A. No. 5:19-CV-145, Crim. A. No. 5:15-CR-1112-01, 2020 WL 1893552, at *3 (S.D. Tex. Jan. 24, 2020) (citing *Woodard v. Collins*, 898 F.2d 1027, 1029 (5th Cir. 1990)).

Aside from a passing reference to an alleged failure to investigate in his memorandum in support, Petitioner does not otherwise address this argument. Because he has failed to explain what investigation his counsel could have conducted or what evidence any such investigation would have revealed, he has not shown that his counsel's performance was deficient, or any

14

prejudice as a result. This unexhausted claim lacks merit, and it is not a substantial claim that excuses the procedural bar. *See Ibarra*, 738 F. App'x at 817.

### E. Warrantless Invasion of Home

Petitioner claims he received ineffective assistance of counsel at trial on the basis of "invasion of home w/o a warrant." (doc. 4 at 12.)

To the extent this argument can be construed as claiming that counsel was ineffective in challenging the initial entry and search of the residence before a warrant was obtained, his argument is contradicted by the record. Counsel moved to suppress the evidence from the residence based on an absence of probable cause and valid consent, (*see* doc. 18-14 at 23-26, 35-42), cross-examined the prosecution's witnesses about whether they had a lawful basis to enter and search the residence, (*see* doc. 18-17 at 33-34, 80-82), objected to the entry during trial, (*see id.* at 31-33, 35-36), and challenged the lawfulness of the initial entry and search during his closing arguments, (*see id.* at 129-31). Petitioner has not brought forward any evidence of deficient performance or prejudice under *Strickland*. His conclusory and unsubstantiated assertions are belied by the record and are insufficient to raise a constitutional claim in this habeas proceeding. *See, e.g.*, *Miller*, 200 F.3d at 282; *Green*, 160 F.3d at 1042; *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982) ("Mere conclusory statements do not raise a constitutional issue in a habeas case.").

### F. Waiver of Jury Trial

To the extent Petitioner claims that counsel was ineffective for failing to explain his right to a jury trial, that he did not know that the case would be tried before the court, and that if he had been "given the right, he would have taken it to jury trial," the claim is contradicted by the record. (doc. 4 at 13; *see id.* at 10-11.)

Petitioner, along with his counsel, signed a waiver of his right to a jury trial in person and

in open court, and it was filed with the trial court on February 12, 2015. (*See* doc. 18-14 at 52.) At the start of trial, counsel stated for the record that the defense and prosecution had entered into an agreement for a bench trial, and that Petitioner waived a jury trial. (*See* doc. 18-17 at 8.) Petitioner did not at any point advise the court that he had not waived a jury trial or that he did not know about the waiver. He has not brought forward any evidence to show that his signed waiver was unknowing or involuntary, or that his counsel's performance in waiving a jury trial was deficient, or that the waiver resulted in prejudice. His conclusory assertions are insufficient to raise an issue of ineffective assistance of counsel under *Strickland*. *See Miller*, 200 F.3d at 282; *Green*, 160 F.3d at 1042. Accordingly, he is not entitled to relief under § 2254 on this claim.

### G. **Uncalled Witnesses**

Petitioner appears to allege an unexhausted claim that his counsel was ineffective for failing to call his brother and son as witnesses during the bench trial. (*See* doc. 4 at 13.)

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009). In order "to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Id.*; *Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir. 1985) ("In order for the appellant to demonstrate the requisite *Strickland* prejudice, the appellant must show not only that this testimony would have been favorable, but also that the witness would have testified at trial."). Petitioner has failed to meet this burden.

16

The undated and unsworn statements of Petitioner's brother and son do not state that they were available to testify at Petitioner's trial and would have done so. (*See* doc. 4 at 18, 20.) Additionally, assuming the statements set out the contents of their proposed testimony, the statement of Petitioner's son does not demonstrate that his testimony would have been favorable. In his statement, Petitioner's son states that the officers asked him whether they could search the residence and he responded, "I guess." (doc. 4 at 20.) This testimony is consistent with the officers' testimony that the boy answered affirmatively when asked whether they could enter the residence, and Petitioner does not show how it would have been favorable to a particular defense. (*See* doc. 18-17 at 80-81.) Accordingly, this unexhausted claim lacks merit, and it is not a substantial claim that excuses the procedural bar.[8] *See Ibarra*, 738 F. App'x at 817.

## VI.   RECOMMENDATION

The *Petition for a Writ of Habeas Corpus by a Person in State Custody*, received on January 9, 2018 (doc. 3), should be **DENIED** with prejudice.

**SIGNED this 2nd day of February, 2021.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[8] To the extent Petitioner claims that the trial court did not allow him to call witnesses or allow affidavit testimony, he has failed to come forward with any evidence to support this claim. (*See* doc. 4 at 10; doc. 22 at 11.) The record shows that Petitioner did not seek to call witnesses or introduce affidavit testimony during trial. His conclusory and unsubstantiated allegations that he was not allowed to call witnesses or that affidavit testimony was not allowed are insufficient to raise a constitutional claim in this habeas proceeding. Accordingly, he is not entitled to § 2254 habeas relief on this claim and it should be denied.

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE